[Cite as *Newton Falls Safety Forces, Inc. v. Kuivila*, 2013-Ohio-4757.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| NEWTON FALLS SAFETY FORCES, INC., | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant/ Cross-Appellee, | : | |
| | | **CASE NO. 2013-T-0003** |
| - vs - | : | |
| | : | |
| JOHN M. KUIVILA, CHIEF OF POLICE, | : | |
| | : | |
| Defendant-Appellee/ Cross-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2009 CV 01877.

Judgment: Affirmed.

*Michael D. Rossi*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant/Cross-Appellee).

*John D. Travis*, *Holly Olarczuk-Smith*, and *Steven D. Strang*, Gallagher Sharp, Sixth Floor, Bulkley Building, 1501 Euclid Avenue, Cleveland, OH 44115 (For Defendant-Appellee/Cross-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This case involves an appeal and cross-appeal from a summary judgment decision of the Trumbull County Court of Common Pleas. The substance of the court's ruling concerns the ownership of various equipment which appellant, the Newton Falls Safety Forces, Inc., has used or maintained in performing certain services for the City of

Newton Falls, Ohio. In its appeal, appellant primarily contests the court's determination that it is not legally entitled to keep a three-phase power generator. In the cross-appeal, appellee, Newton Falls Chief of Police John M. Kuivila, challenges the court's ruling as to the ownership of 2 two-way radios.

{¶2} Appellant is an Ohio non-profit corporation which has been in existence for over 40 years. Essentially, appellant is a voluntary association of private citizens who, through the years, have performed specific types of jobs or duties for the Newton Falls Police Department. At one point in time, appellant's members were viewed as auxiliary officers for the department, and were required to take an oath. Furthermore, there were some years in which the members received nominal salaries so that they could receive workers' compensation if they were injured while working.

{¶3} In performing their duties, appellant's members were generally subject to the control of the city's chief of police. However, appellant also has a "captain" who acts as the figurehead or quasi-president of the organization. In the years immediately prior to 2009, Lawrence Sembach was the "captain" over the other volunteer members.

{¶4} Appellant received funding for its operation from two basic sources. First, the city would regularly appropriate funds for the purchase of equipment to be used by the volunteers. In most instances, the city or the police department itself would make the purchase on behalf of appellant. For example, the 1989 annual budget report for the police department stated that the city bought rain pants and two portable radios to be utilized by the volunteers. In 1990, the annual report indicated that two new portable radios and two "light bars" were purchased for the auxiliary group.

{¶5} In other instances, the city would appropriate funds directly to appellant, and then permit the volunteers to decide what equipment to purchase. To facilitate this

2

type of purchase, appellant maintained its own checking account.

{¶6} Appellant's second general source of funding was through donations from other private citizens groups in the area. The separate groups included the local VFW, Amvets, and a "Fourth of July" committee. In some instances, the donation was made to the city itself, which would then make a purchase for the volunteers or appropriate the funds directly to appellant. There were other instances in which the donation would go directly to the volunteers. For example, the department's 1991 annual budget contained this statement: "With the donation of $1000 from the Newton Falls American Legion Post and $2359 from the City, [appellant] was able to purchase seven new portable radios, along with one speaker mike."

{¶7} Through the years, appellant was able to accumulate a substantial amount of police equipment, including 11 two-way radios, at least 12 traffic cones, and 4 magnetic signs which could be attached to the side of a vehicle and read "Newton Falls Police Department." The majority of the equipment was stored inside a barn on Captain Sembach's private residential property.

{¶8} In addition to its "purchased" equipment, appellant also had possession of a three-phase power generator and other emergency provisions, such as cots. These latter items were originally placed in Trumbull County by a federal agency in the 1950's, and were used by the City of Newton Falls during an emergency caused by blizzard in 1978. Following that emergency, the city police department retained possession of the power generator and other provisions. A few years later, appellant took custody of the various items and assumed responsibility for their maintenance, even though some of the items were still stored on municipal property.

{¶9} Appellee was appointed the Newton Falls Chief of Police in October 2008.

3

Early the next year, he informed Captain Sembach that there would be changes in the nature of the relationship between the department and appellant's volunteers. When a disagreement ensued and Sembach sought to address City Council about the matter, appellee demanded that Sembach provide an inventory of all equipment in appellant's possession. In turn, when Sembach did not produce an inventory, appellee took steps to stop the volunteers from having access to certain equipment on municipal property.

{¶10} In July 2009, appellant initiated the underlying civil case against appellee. Under the first claim of its complaint, appellant sought a declaratory judgment regarding the ownership of the disputed equipment. Although the complaint also stated a Section 1983 claim under which appellant alleged that appellee unlawfully seized its equipment without due process of law, appellant voluntarily dismissed this second claim during the course of the action.

{¶11} After the parties unsuccessfully attempted to mediate their dispute for over two years, the case was referred to a court magistrate for resolution. Starting in March 2012, the parties engaged in discovery, which essentially consisted of the taking of the depositions of appellee, Captain Sembach, and Robert Carlson, who was the city's chief of police for approximately 20 years before appellee replaced him. Transcripts of all three depositions were submitted by appellee in conjunction with its summary judgment motion.

{¶12} Once discovery had ended, the parties filed competing Civ.R. 56 motions for summary judgment on the sole declaratory judgment claim. In its motion, appellant generally argued that the funds and equipment it received from the city over the years had been intended as a gift. In relation to the power generator, appellant asserted that the federal government abandoned the machine in 1982, thereby permitting appellant to

4

take ownership of the item. In support of its "abandonment" theory, appellant attached to its motion the affidavit of Retired Chief Carlson.

{¶13} In his motion, appellee maintained that the mere appropriation of funds or equipment to appellant did not constitute a gift by the city, and that City Council never passed any specific legislation whereby ownership of the disputed equipment was given to appellant. As to the power generator, appellee argued that the Carlson affidavit was deficient because Carlson did not state the basis for his alleged personal knowledge of the actions of the federal government. He further argued that, even though appellant was given the responsibility of maintaining the generator, actual custody of the machine had always remained with the city.

{¶14} After each side filed a response to the opposition's motion, the magistrate issued a written decision on the matter, recommending that each party was entitled to summary judgment in part. Specifically, the magistrate concluded that the evidentiary materials established that appellant owned 2 of the 11 two-way radios and between 14-20 traffic cones, while the city owned the remaining 9 two-way radios, the magnetic "police department" signs, and the power generator. Regarding the portable radios, the magistrate held that appellant could only retain the two radios that were purchased with the $1,000 donation from the Newton Falls American Legion Post. As to the generator, the magistrate rejected the Carlson affidavit for lack of personal knowledge; therefore, appellant failed to present any evidence that the federal government had intended for it to take ownership.

{¶15} Both parties submitted written objections to the magistrate's decision. In a separate entry issued in December 2012, the trial court overruled each side's objections and adopted the magistrate's findings of fact and conclusions of law. Hence, the court

5

entered final judgment on appellant's sole remaining claim and ordered the distribution of the disputed equipment in accordance with the magistrate's recommendation.

{¶16} In bringing the initial appeal of the foregoing judgment, appellant asserts a single assignment of error for review:

{¶17} "The trial court erred in overruling appellant's objections to the magistrate's decision; adopting that decision, its findings and conclusions; and in entering judgment thereon."

{¶18} Under this sole assignment, appellant focuses primarily upon the analysis of the court magistrate concerning the ownership of the power generator. As previously noted, appellant contended in its summary judgment motion that it was entitled to retain the generator because the machine was in its possession when it was abandoned by the federal government. In rejecting appellant's contention, the magistrate determined that appellant's evidentiary material was not sufficient to create a factual dispute on the "abandonment" issue because Robert Carlson's affidavit was not based upon his own personal knowledge. Appellant now argues that the magistrate's analysis regarding the affidavit was flawed because Carlson expressly averred he had personal knowledge of all facts set forth in the affidavit.

{¶19} Robert Carlson was the Newton Falls Chief of Police from February 1987 until November 2008; thus, he had substantial contact with appellant and its members throughout the years. Besides generally stating in the first paragraph of his affidavit that his averments were predicated upon his own personal knowledge, Carlson asserted in the second paragraph that he was "familiar with the ownership of the 'generator' * * *." Carlson further averred that, although the disputed machine was originally owned by the "United States" government, it had been entrusted to appellant's custody prior to 1982.

6

The affidavit then concluded:

**{¶20}** "In circa 1982, through its Federal Emergency Management Agency, together with state and local government, the US abandoned that ownership, instructing its stated custodian that it was free to destroy or discard the generator and other emergency supplies and equipment."

**{¶21}** To be deemed a proper evidentiary item for summary judgment purposes, an affidavit must be based upon the affiant's personal knowledge, must delineate facts that are admissible into evidence, and must show that the affiant would be competent to testify to the stated facts at trial. Civ.R, 56(E); *Discover Bank v. Damico*, 11th Dist. Lake No. 2011-L-108, 2012-Ohio-3022, ¶14. "'Personal knowledge' is 'knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" *Bonacorsi v. Wheeling & Lake Erie Railway Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶26, quoting Black's Law Dictionary (7th Ed.Rev.1999) 875. An unsubstantiated assertion of personal knowledge can be sufficient to satisfy Civ.R. 56(E) only when "the nature of the facts in the affidavit combined with the identity of the affiant creates a reasonable inference that the affiant has personal knowledge of the facts in the affidavit." *The Home Savings and Loan Co. of Youngstown, Ohio, v. Eichenberger*, 10th Dist. Franklin No. 12AP-1, 2012-Ohio-5662, ¶18.

**{¶22}** In the Carlson affidavit, the former police chief was essentially attempting to state that, in 1982, employees of the federal government formed an intent to abandon the power generator and allow appellant to keep it. However, in making this averment, Carlson never indicated how he, as a lieutenant with the city police department at that time, would be privy to such information. In other words, given that Carlson was not an

employee of the federal government, his mere assertion of personal knowledge was not sufficient, in the absence of further explanation, to demonstrate that he was qualified to testify on the "abandonment" issue. To this extent, the affidavit was deficient for Civ.R. 56(E) purposes.

{¶23} Even though a complete explanation of the basis of Carlson's knowledge was not provided in his affidavit, a review of the other evidentiary materials shows that such an explanation was given as part of his deposition. In testifying in relation to the ownership of all emergency supplies/equipment from the federal government, Carlson stated that his knowledge was based upon a letter he had been allowed to read at some point in the early 1980's. According to Carlson, the letter was sent by Trumbull County Emergency Management to Clayton Reaks, a former member of appellant. Therefore, in making the averments in his affidavit, Carlson was restating the alleged contents of the letter to Reaks.

{¶24} "'Proving the contents of a writing presents problems with hearsay, authentication, and the best evidence rule.'" *SFJV 2005, L.L.C. v. Ream*, 187 Ohio App.3d 715, 2010-Ohio-1615, ¶46 (2nd Dist.), quoting *State v. Carter*, 4th Dist. Ross No. 99 CA 2479, 2000 Ohio App. LEXIS 4558 (Sept. 26, 2000). As to the best evidence rule, Evid.R. 1004 provides that other evidence of the contents of a writing is admissible only when: (1) the original is lost or destroyed; (2) the original is not obtainable; or (3) the original is in the possession of a party-opponent.

{¶25} In this case, appellant never presented any evidentiary materials tending to establish that any of the three prongs under Evid.R. 1004 would to applicable to the Reaks letter; i.e., there was no evidence showing that the letter was lost, unobtainable, or in appellee's present possession. Thus, even if appellant could show that Carlson's

assertions regarding the letter's contents were covered under a hearsay exception, the assertions would still not be admissible into evidence under the best evidence rule. For this reason, even if the Carlson affidavit had provided a full explanation as to the basis of his personal knowledge on the "abandonment" issue, it still could not be considered as a proper evidentiary item under Civ.R. 56(E).

{¶26} Pursuant to the foregoing, the magistrate correctly held that appellant did not present any evidentiary materials sufficient to create a factual dispute as to whether it obtained ownership of the power generator due to of the government's abandonment of the item. Accordingly, since appellee did present some evidence indicating that the generator and the other emergency provisions were left in the custody of the city police department in the late 1970's, the magistrate and trial court could justifiably conclude that appellee was entitled to have custody of the generator over appellant. Summary judgment in favor of appellee was appropriate on this basis.

{¶27} As a separate argument under its assignment, appellant maintains that its evidentiary materials were sufficient to demonstrate its ownership of the four magnetic "police" signs that can be attached to a car door. In support, appellant emphasizes that, during his deposition, Captain Sembach produced a cancelled check showing that the signs were paid with funds from appellant's separate bank account. Appellant claims that, in rejecting Sembach's testimony and exhibits, the magistrate engaged in a "weighing" exercise which is not appropriate in ruling upon a summary judgment motion.

{¶28} Appellant has mischaracterized the magistrate's legal analysis. In denying appellant's summary judgment motion as to the signs, the magistrate did not conclude that Sembach's deposition testimony lacked credibility; instead, the magistrate held that the evidence was legally insufficient to show that appellant had used its own funds to

9

purchase the signs. Specifically, the magistrate held that, even though the funds for the signs were taken from appellant's account, this was not sufficient to prove that the funds "belonged" to appellant. According to the magistrate, appellant had not eliminated the possibility that the funds in question had been appropriated by the city, and that the city would therefore own any item bought with those funds.

{¶29} While appellant did present some evidence indicating that it did receive some funding through donation from private entities, there was also no dispute that the city would often appropriate funds directly to appellant, instead of buying the necessary equipment itself. Given these facts, in order for appellant to prove that the four disputed signs were its property, appellant had to trace those specific funds to a donation from a private entity. This was never done. Furthermore, appellant has not attempted to argue before this court that an appropriation from the city constituted a gift.

{¶30} "'Summary judgment is appropriate when the moving party establishes the following: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor.' *Lawrence v. Jiffy Print, Inc.*, 11th Dist. No. 2004-T-0065, 2005 Ohio 4043, ¶6.

{¶31} "'If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 1996 Ohio 107, 662 N.E.2d 264 (* * *). If the nonmoving party fails to do so, the trial court may enter

summary judgment against that party.' *Id*. at ¶7." *Pringle v. Forum Health*, 11th Dist. Trumbull No. 2008-T-0131, 2013-Ohio-537, ¶11-12.

{¶32} In this case, in responding to appellee's summary judgment motion, appellant failed to carry its burden of submitting sufficient evidentiary materials to create a factual dispute concerning its ownership of the power generator and the magnetic signs. In light of this, summary judgment in appellee's favor on those two items was proper. Appellant's sole assignment of error lacks merit.

{¶33} In maintaining a cross-appeal from the summary judgment ruling, appellee also raises one assignment of error for review:

{¶34} "The trial court committed reversible error in adopting the magistrate's recommendation that [appellant] owned the 2 two-way radios."

{¶35} In contending that appellant was not entitled to retain any of the two-way radios, appellee maintains that the magistrate and trial court failed to fully consider the statements he made in his deposition and affidavit regarding the actual effect of making a donation to appellant. As previously discussed, the magistrate recommended that two of the disputes radios be awarded to appellant because they were bought with the 1991 $1,000 donation from the American Legion Post. Appellee submits that, regardless of the source of the funds, the two radios still belonged to the city because his evidentiary materials established that a donation from a private entity was treated in the same way as an appropriation from the city.

{¶36} Specifically, appellee notes that, as part of his deposition, he testified that any donation made to appellant would not be given directly to volunteers, but instead would be submitted to the city's finance department. He further testified that such funds would then be subject to the control of City Council, which would decide how the money

11

would be distributed and what equipment would be purchased. According to appellee, since funds from donations were distributed in the same manner as any appropriation, the city could justifiably claim title to the phones.

{¶37} The 1991 annual budget report for the city's police department stated that appellant was given a total of $3,359 for the purchase of seven portable radios during that fiscal year. The report further stated that, of the total sum, $2,359 was from the city and $1,000 was a donation from the American Legion Post. Given the specific wording of the report, there is no dispute that the $1,000 donation was intended as a gift solely for appellant.

{¶38} Under Ohio law, "'[a] completed gift is created where the evidence in a particular case shows delivery of property by the donor to a third person for the benefit of the donee, under circumstances manifesting an intention to vest immediate title in the donee and relinquishment of all dominion and control over the property; *and the third person is thereby constituted a trustee for the donee.*'" (Emphasis added.) *Moser v. Moser*, 11th Dist. Portage No. 2006-P-0047, 2007-Ohio-4109, ¶32, quoting *Streeper v. Myers*, 132 Ohio St. 322, paragraph three of the syllabus (1937). Under the facts of this action, even if $1,000 donation was originally received by the city, this would not alter the effect of the American Legion Post's intention to give the funds to appellant. The city acted solely as a trustee of the funds until they were used for the benefit of appellant. Hence, any equipment purchased with the donation would belong solely to appellant.

{¶39} Appellee further argues that appellant should not be allowed to retain the two radios because they are meant solely for police use. However, in raising this point, appellee has not cited any legal authority for the proposition that it is illegal for a private

citizen to own such a radio. Moreover, there is no allegation that appellant's members have misused the radios or otherwise interfered with police business. In this respect, appellee has failed to demonstrate any justifiable reason for depriving appellant's of its lawful property.

{¶40} Given that there was no dispute that the $1,000 donation was intended as a gift for appellant, it was entitled to retain the 2 two-way radios as a matter of law. As a result, the granting of summary judgment in favor of appellant as to those two items was legally correct. Appellee's sole assignment in his cross-appeal is without merit.

{¶41} Pursuant to the foregoing, the respective assignments under appellant's direct appeal and appellee's cross-appeal are both without merit. Therefore, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed in all respects.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

13